

## PROMISSORY NOTE AND SECURITY AGREEMENT - CONSUMER PAPER

Note Date: 08-21-2010

Borrower Name: ANTHONY J SARKAUSKAS JR
Address (Include Zip Code):
1332 GARDEN CT
BATAVIA, IL 60510

Lender:
JPMorgan Chase Bank, NA
Home Equity Lending Division
1111 Polaris Parkway
Columbus, OH 43240

Borrower Name: BEVERLY A SARKAUSKAS
Address (include Zip Code):
1332 GARDEN CT
BATAVIA, IL 60510

Borrower Name: N/A
Address (Include Zip Code):
N/A
N/A

**WHO IS BOUND:** You, meaning each person who signs this Promissory Note and Security Agreement ("Agreement"), are jointly and severally liable to us for any amount due on it. In this Agreement "we", "us" and "our" mean JPMorgan Chase Bank, NA.

### DESCRIPTION OF COLLATERAL:

2008 DODGE TRUCK DAKOTA PICKUP-V6 QUAD CAB ST (VIN 1D7HE28K78S516819)

"e" means an estimate       FEDERAL TRUTH-IN-LENDING DISCLOSURES:

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | AMOUNT FINANCED | TOTAL OF PAYMENTS |
|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments as scheduled. |
| 5.486% | $1,829.60 e | $12,453.40 e | $14,283.00 e |

**PAYMENT SCHEDULE:** Your payment schedule will be 59 equal payments of $238.05 due on the same date of each month starting on September 28, 2010 and one final payment of $238.05 due on August 28, 2015 (estimated dates).

☒ **ANNUAL PERCENTAGE RATE MAY INCREASE:** If the box is checked, then this section applies and the Annual Percentage Rate (APR) above includes a preferred rate reduction of 0.25% because you chose to have payments automatically deducted from a JPMorgan Chase Bank, NA account designated by you in a separate document. You must continue automatic payment deductions from this account to continue to receive this rate reduction. If the automatic payment deductions are terminated for any reason, then the Annual Percentage Rate may increase by 0.25%. If that occurs, your final payment will be larger than the amount disclosed in the Payment Schedule above. For example, if your Amount Financed is $20,000 for a 60 month term, and your APR is 7.25%, you are scheduled to make 60 payments of $398.39 each. If you terminate the automatic payment deductions after the first scheduled payment, then the APR would increase to 7.50%, you will continue to make monthly payments of $398.39 but your final payment amount would increase to $564.39.

**PREPAYMENT:** If you pay off this loan early, you may have to pay a penalty.

**SECURITY:** You are giving us a security interest in the collateral described above including any accessories, equipment and replacement parts installed in the collateral (as further described in this Agreement).

**LIEN FILING FEE:** $0.00

**LATE FEE:** If a payment is more than 10 days late, you will be charged 5.000% of the full installment due or $25.00, whichever is greater.

**OTHER TERMS:** Please read this Agreement for additional information on security interests, nonpayment, default, prepayment penalties, and our right to require repayment in full before the scheduled date.

**ADDITIONAL AMOUNTS:** We have based the amount of your loan on information we received either directly from you or a third party directed by you to provide information to us. In the event we have to advance additional funds to pay third parties on your behalf, or, if you are refinancing a loan by Chase and any credits to your account are reversed or returned, we may either demand immediate payment of the amount of these items and/or advances or add such amount to your loan balance, which will be subject to interest as described in this Agreement.

FORM NO. CAF DL-MULTI (Rev. 08/09)       BANK COPY (ORIGINAL)       Page 1 of 5
(c) 2006 JPMorgan Chase Bank, N.A.

07/21/2014 10:45  6022213756  CHASE BANK  PAGE 03/09

ITEMIZATION OF AMOUNT FINANCED

| | | | |
|---|---|---|---|
| (a) | Amount Paid Directly to You | | $0.00 |
| (b) | Loan Origination Fee | | $75.00 |
| (c) | Fees and Taxes Paid to Governmental Agencies | | $95.00 |
| (d) | Optional Debt Cancellation Contracts | | $0.00 |
| (e) | To: | BANK OF AMERICA FOR PAYOFF TO EXISTING CREDITOR | $12,358.40 |
| (f) | To: | N/A | $0.00 |
| (g) | To: | N/A | $0.00 |
| (h) | To: | N/A | $0.00 |
| (i) | To: | N/A | $0.00 |
| (j) | To: | N/A | $0.00 |
| (k) | To: | N/A | $0.00 |
| (l) | To: | N/A | $0.00 |
| (m) | To: | N/A | $0.00 |
| (n) | To: | N/A | $0.00 |
| (o) | To: | N/A | $0.00 |
| (p) | To: | N/A | $0.00 |
| (q) | To: | N/A | $0.00 |

Principal Balance                                                  $12,528.40

Minus Prepaid Finance Charges (Loan Origination Fee)               $75.00

Amount Financed                                                    $12,453.40

*We may retain, or receive, a portion of these amounts. However, we do not retain portions of any amounts paid to other creditors, governmental agencies, or seller(s) of the Collateral.

**OPTIONAL DEBT CANCELLATION CONTRACTS:** Debt Cancellation Contracts listed below are not required to obtain credit. The contract issued for the Debt Cancellation Contracts will describe the terms and conditions of the coverage in more detail.

By checking the applicable box and signing below, you elect to purchase the Debt Cancellation Contracts listed below and agree to pay the additional cost for such coverage.

☐ DCC 1:     N/A                                    $    0.00  *

☐ DCC 2:     N/A                                    $    0.00  *

Name and address of DCC 1 company        N/A

Name and address of DCC 2 company        N/A

X  __N/A_____    __N/A_____    X  __N/A_____    __N/A_____
   Borrower's Signature           Date              Co-Borrower's Signature        Date

**PROMISE TO PAY:** You promise to pay us, in installments as shown above, the Principal Balance shown in the Itemization of Amount Financed above, plus a Finance Charge determined as follows: a Loan Origination Fee ("Prepaid Finance Charge") shown in the Itemization of Amount Financed above, and a Finance Charge determined by applying each day to the unpaid amount of the Principal Balance a daily rate of 1/365th (1/366th in a leap year) of the base rate of 5.240% ("Base Rate"). If you financed the Loan Origination Fee, it is included in the Principal Balance. You agree that the Finance Charge will start to accrue as of the date we disburse the Loan proceeds.

**WHEN AND WHERE LOAN IS MADE:** This is a direct loan from us to you. This loan is made in Ohio when we accept a completed agreement acceptable to us and signed by you, in Ohio.

**WHICH LAW APPLIES:** This Agreement is governed by the laws (including, but not limited to, any and all statutes, regulations, interpretations and opinions) of the United States and the State of Ohio for all matters related to interest and the exportation of interest. For all other matters, this Agreement will be governed by the laws of the United States, and the state of residence of the borrower (to the extent that such laws are not preempted by the laws of the United States).

**PAYMENTS BEFORE OR AFTER DUE DATE:** This is a simple interest loan. This means that the amount of Finance Charge as shown above may vary. If no late charge and/or return check charge is owed, we credit each payment first to accrued Finance Charge and then to the unpaid balance of the Principal Balance. If a late charge and/or return check charge is owed, we credit each payment first to accrued Finance Charge, then to the scheduled unpaid balance of the Principal Balance, then to the unpaid late charge and/or return check charge, and then to the unpaid balance of the Principal Balance. We compute your Finance Charge each day on the unpaid balance of the Principal Balance using the Base Rate as shown above. The earlier you make payments before their due dates, the less Finance Charge you will owe. We will send you a refund check for any amount we owe you (if it is $1.00 or more) after you make your last payment. On the other hand, the later you make payments after they are due, the greater the Finance Charge. We will advise you of any additional amount you owe us (if it is $1.00 or more) before your last payment is due.

**PREPAYMENT:** If you pay off this loan in full within twelve (12) months after the Note Date, you may be charged a prepayment charge of $150.

**OWNERSHIP AND RISK OF LOSS:** You will pay us all you owe under this Agreement even if the Collateral is damaged, destroyed or missing, whether or not the Collateral is insured. You will not give possession of the Collateral to others or sell, transfer, or remove the Collateral from the United States without our written permission. You will maintain the Collateral in good running order and condition, except for wear and tear caused by ordinary use, and permit us to inspect the Collateral at any reasonable time. You will not make or permit to be made any material change in the Collateral. You will not expose the Collateral to misuse or confiscation or permit anyone to use the Collateral for any unlawful purpose. You will not permit the Collateral to be operated by an unlicensed individual. You will keep the Collateral free of any claims and seizures by any government authority. You will not rent the Collateral to others or carry passengers or goods for hire. Unless you notify us in writing otherwise, you will keep the Collateral at your address stated on

FORM NO. CAF DL-MULTI (Rev. 08/09)         BANK COPY (ORIGINAL)                           Page 2 of 6
                                           (c) 2006 JPMorgan Chase Bank, N.A.

the front of this Agreement. You will immediately notify us of any change in your address or the address where the Collateral is regularly located. We are not obligated to do so, but we may elect to pay any liens, fees, taxes, fines, repair bills, or storage bills in connection with the Collateral, or any other amount to protect our interests in the Collateral. If we do so, we will let you know the dollar amount and type of charge. You agree to repay such amount to us when we ask for it.

**SECURITY INTEREST:** You are granting us a security interest in the Collateral, any proceeds of the Collateral, and any accessories, equipment and replacement parts installed in the Collateral. The security interest also covers insurance premiums or other products financed in this Agreement, proceeds of insurance policies on the Collateral, and proceeds of any insurance policies on your life or health financed in this Agreement. The security interest secures payment of all amounts you owe under this Agreement and in any transfer, renewal, extension, refinancing, modification, or assignment of this Agreement. It also secures your other agreements in this Agreement. You will cause or cooperate in causing our security interest (lien) on the Collateral to be shown on the title. You will not allow any subordinate or other liens to be placed on the Collateral.

**REQUIRED INSURANCE:** You will keep the Collateral insured with a policy satisfactory to us, for the term of this Agreement. The insurance may be obtained through an existing policy of insurance owned or controlled by you or from an insurer and agent of your choice that is authorized to sell such insurance and is reasonably acceptable to us. We may, for reasonable cause, decline the insurance provided by you. Your choice will not affect our credit decision. The insurance you maintain will include comprehensive fire, theft and collision coverage, with a maximum deductible of $1000, insuring the Collateral in an amount sufficient to cover the Collateral's value. You will make us loss payee and provide written evidence of insurance when we ask for it. We may (i) make any claim under your insurance policy, (ii) at our option, cancel the insurance on your default under this Agreement, and/or (iii) receive any insurance settlement under your policy and apply the amounts received, at our option, to repair the Collateral or to your debt under this Agreement. If any charge for required insurance is returned to us, it may be credited to your account or used to buy similar insurance or insurance which covers only our interest in the Collateral (to the extent permitted by law). If any charge for optional insurance is returned to us (e.g., refund on credit life insurance), it will be credited to your account or returned to you.

**DEFAULT:** To the extent permitted by law, you are in default if (1) you fail to pay any payment when due; (2) you break any of the agreements in the Agreement; (3) you die; (4) you cannot pay your debts as they become due; (5) any person tries to take the Collateral by legal proceedings; (6) you made materially false statements in applying for the credit extended under this Agreement; (7) bankruptcy or insolvency proceedings are initiated by or against you; (8) you fail to maintain insurance on the Collateral; (9) the Collateral is stolen and not recovered, declared a total loss or confiscated; or (10) you assign this Agreement, or any part thereof, without our prior written consent. To the extent permitted by applicable law, if you default, we can, at our option, subject to any right you may have to cure the default: (a) take immediate possession of the Collateral (repossess the Collateral) with or without legal process; (b) demand that you pay all you owe on this Agreement at once, which will be subject to interest at the greater of 18% or the Base Rate that applies to this Agreement until you pay such amount; (c) take any reasonable action to prevent loss by us; and (d) exercise any other legal or equitable remedy available to us. To the extent permitted by law, if you default and we hire an attorney who is not our salaried employee to collect what you owe or to otherwise enforce this Agreement, you will pay our actual and reasonable attorneys' fees, and any court costs.

**REPOSSESSION AND REDEMPTION OF THE COLLATERAL:** Repossession means that we take the Collateral from you. To take the Collateral we can enter your property, or the property where the Collateral is stored, to the extent permitted by law, as long as it is done peacefully. If there is any personal property in the Collateral, such as clothing, we can store it for you. You must give us prompt notice that you claim any articles in the Collateral not covered by our security interest. If you do not give us prompt notice, we will not be responsible if any or all of the articles are lost or cannot be accounted for. You authorize us to use your license plates for the Collateral in moving the Collateral to the place of storage. Any accessories, equipment or replacement parts will remain with the Collateral. **NOTICE: THE COLLATERAL IN THIS TRANSACTION MAY BE SUBJECT TO REPOSSESSION. IF IT IS REPOSSESSED AND SOLD TO SOMEONE ELSE, AND ALL AMOUNTS DUE TO THE SECURED PARTY ARE NOT RECEIVED IN THAT SALE, YOU MAY HAVE TO PAY THE DIFFERENCE.**

**SALE OF THE REPOSSESSED COLLATERAL:** We will send you a written notice of sale at least 10 days before selling the Collateral. If you do not redeem the Collateral under the circumstances set forth in the notice, we can sell it. We will use the net proceeds of sale to pay all or part of your debt under this Agreement. The "net proceeds of sale" consist of the Collateral's selling price minus, to the extent permitted by law, any (1) charges for repossessing the Collateral (which may include payment of liens, fees, taxes, fines, or bills due in connection with the Collateral); (2) charges for storing, cleaning, advertising and selling the Collateral; (3) reasonable attorney's fees, and any court costs we incur in connection with repossessing the Collateral; and (4) other charges permitted by law. If you owe us less than the net proceeds of sale, the difference is due to you, unless someone else has an interest in the Collateral and we must pay such excess to them. For example, we may be required to pay a lender who has given you a loan and has also taken a security interest in the Collateral. If you owe more than the net proceeds of sale, to the extent allowed by law you will pay us the difference between the net proceeds of sale and what you owe when we ask for it. If you do not pay this amount when asked, you may also be charged interest on this amount at the greater of 18% or the Base Rate that applies to this Agreement.

**DELAY IN ENFORCING RIGHTS AND CHANGES OF THIS AGREEMENT:** We can delay or refrain from enforcing any of our rights under this Agreement without losing them. For example, we can extend the time for making some payments without extending others. **THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN AGREEMENT MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT SIGNED BY YOU AND US.**

**COLLATERAL TITLE/REGISTRATION:** You agree to: (1) promptly title and register the Collateral in your name(s) and list us as lienholder; and (2) pay any and all applicable taxes and governmental fees that are incurred in connection with purchasing and owning the Collateral, including but not limited to, sales tax.

**CREDIT REPORTING:** We may obtain a consumer credit report from one or more consumer credit reporting agencies (credit bureaus) in connection with your application and as otherwise allowed by applicable law. You agree that we may also verify your employment, income, assets and debts.

**RETURN CHECK CHARGE:** If any check, draft or other item you send in payment of your obligation on this Agreement is returned unpaid for any reason, we may charge you, at our option, and you agree to pay a return check charge of $25.00. You are responsible for paying the return check charge as well as the value of the check, draft, or other item.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT AGREEMENT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

FORM NO. CAF DL-MULTI (Rev. 08/09)    BANK COPY (ORIGINAL)    Page 3 of 5
(c) 2006 JPMorgan Chase Bank, N.A.

07/21/2014  10:45  6022213756  CHASE BANK  PAGE  05/09

## AGREEMENT TO ARBITRATE DISPUTES

The following Arbitration Agreement can significantly affect your rights in any dispute with us. Please read it carefully before signing this Agreement.

1. IF EITHER OF US CHOOSES, ANY CLAIM OR DISPUTE BETWEEN US (AS DEFINED BELOW) WILL BE DECIDED BY ARBITRATION AND NOT IN COURT OR BY A JURY TRIAL.
2. IF EITHER OF US CHOOSES TO ARBITRATE, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS OR OTHER REPRESENTATIVE ON BEHALF OF OTHER PERSONS OR AS A CLASS MEMBER OR OTHER REPRESENTED PERSON ON ANY CLASS CLAIM OR OTHER REPRESENTATIVE TYPE OF CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS OR OTHER REPRESENTATIVE ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.
3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this clause, and the arbitrability of the claim or dispute, between you and us or our employees, agents, successors or assigns, which arise out of or relate to your credit application, this Agreement or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Agreement) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. You expressly waive any right you may have to arbitrate a class or other representative type of action. You may choose to use: the American Arbitration Association, 335 Madison Ave., Floor 10, New York, NY 10017-4605 (www.adr.org) or any other arbitration organization that you and we agree on. The arbitration shall be conducted in accordance with this Arbitration Agreement and, unless otherwise provided for in this Agreement to Arbitrate Disputes, the rules of the arbitration organization you chose (the "Arbitration Rules"). You may get a copy of the Arbitration Rules by contacting the arbitration organization or visiting its website.

The arbitrator shall be an attorney or retired judge selected in accordance with the Arbitration Rules. The arbitrator shall apply governing substantive law in making an award. The arbitration hearing shall be conducted in the federal district in which you reside. The arbitrator's decision shall be in writing and either party may appeal the arbitrator's decision through the arbitration organization you chose. We will pay your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $1,500. We will also pay any additional amount of such fees that the arbitrator determines we must pay in order to make this Agreement to Arbitrate Disputes enforceable. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. The arbitrator's award shall be final and binding on all parties, except that the losing party may request a new arbitration if allowed by the Arbitration Rules. This Agreement to Arbitrate Disputes, and any arbitration conducted hereunder, shall be governed by the Federal Arbitration Act (9 U.S.C. § et. seq.) and not by any state law concerning arbitration.

You and we retain any rights to self-help remedies, such as repossession. You and we retain the right to seek individual remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies or filing suit. Any court having jurisdiction may enter judgment on the arbitrator's award. This agreement shall survive any termination, payoff or transfer of this Agreement. If any part of this Agreement to Arbitrate Disputes, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable.

**NEGATIVE CREDIT REPORTING NOTICE:**
We may report information about your account to credit bureaus. Late payments, missed payments or other defaults on your account may be reflected in your credit report.

- You waive the provisions of California Vehicle Code 1808.21 and authorize the California Department of Motor Vehicles to furnish your residence address to us.

**IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT**
To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.

What this means for you: When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

THIS IS A CONSUMER CREDIT TRANSACTION. CONSUMER NOTE.

LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED.

YOU ACKNOWLEDGE THAT YOU HAVE RECEIVED A COMPLETED COPY OF THIS AGREEMENT. YOU HAVE READ IT AND UNDERSTAND IT. ANY COSIGNER SIGNING BELOW ALSO CERTIFIES THAT BY SIGNING BELOW, THE COSIGNER (IF ANY) ACKNOWLEDGES RECEIPT OF AND AGREEMENT WITH THE COSIGNER NOTICES ON THE NEXT PAGE.

CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THE AGREEMENT BEFORE YOU SIGN IT.

_[signature]_ ANTHONY J SARKAUSKAS JR, Individually

_[signature]_ BEVERLY A SARKAUSKAS, Individually

FORM NO. CAF DL-MULTI (Rev. 08/09)    BANK COPY (ORIGINAL)    Page 4 of 6
(c) 2006 JPMorgan Chase Bank, N.A.

07/21/2014 10:45    6022213756    CHASE BANK    PAGE 06/09

NOTICE TO COSIGNER:
You are being asked to guarantee this debt. Think carefully before you do. If the borrower does not pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility. You may have to pay up to the full amount of this debt if the borrower does not pay. You may also have to pay late charges and/or collection costs, which increase this amount. The lender can collect this debt from you without first trying to collect from the borrower. The lender can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages (except in South Carolina, Texas or other states which prohibit garnishment of wages), etc. If this debt is ever in default, that fact may become a part of your credit record. This notice is not the contract that makes you liable for the debt. Read the remainder of this Agreement for the exact terms of your obligation.

Aviso Para El Fiador (Spanish Translation Required by California Law):
Se le está pidiendo que garantice esta deuda. Piénselo con cuidado antes de ponerse de acuerdo. Si la persona que ha pedido este préstamo no paga la deuda, usted tendrá que pagarla. Esté seguro de que usted podra pagar si sea obligado a pagarla y de que usted desea acepatar la responsabilidad. Si la persona que ha pedido el préstamo no paga la deuda, es posible que usted tenga que pagar la suma total de la deuda, más los cargos pro tardarse en el pago o el costo de cobranza, lo cual aumenta el total de esta suma. El acreedor (financiero) puedo cobrarle a usted sin, primeramente, tartar de cobrarle al deudor. Los mismos métodos de cobranza que pueden usarse contra el deudor, podrán usarse contra usted, tales como presenter una demanda en corte, quitar parte de su sueldo, etc. Si alguna vez no se cumpla con la obigación de pagar esta deuda, se puede incluir esta información en la historia de crédito de usted. Esta aviso no es el contrato mismo en que se le echa a usted la responsabilidad de la deuda.

VERMONT NOTICE TO COSIGNERS: YOUR SIGNATURE ON THIS NOTE MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN. IF THE BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU.

NEW YORK NOTICE TO COSIGNER:
You agree to pay the debt identified below although you may not personally receive any property, goods, services, or money. You may be sued for payment although the person who receives the property, goods services, or money is able to pay. You should know that the Total of Payments listed below does not include finance charges resulting from delinquency, late charges, repossession or foreclosure costs, court costs or attorney's fees, or other charges that may be stated in the note or contract. You will also have to pay some or all of these costs and charges if the note or contract, the payment of which you are guaranteeing, requires the borrower to pay such costs and charges. This notice is not the contract that obligates you to pay the debt. Read the remainder of this Agreement for the exact terms of your obligation.

IDENTIFICATION OF DEBT YOU MAY HAVE TO PAY
Name of Debtor: The Borrower
Name of Creditor: JPMorgan Chase Bank, NA
Date: The Note Date
Kind of Debt: Consumer Vehicle Purchase Loan
Total of Payments: Total of Payments as stated in the Federal Truth in Lending Disclosures

FORM NO. CAF DL-MULTI (Rev. 08/09)         BANK COPY (ORIGINAL)                                      Page 5 of 5
                                    (c) 2008 JPMorgan Chase Bank, N.A.

07/21/2014  10:45   6022213756   CHASE BANK   PAGE  07/09

# STATE OF ILLINOIS
## CERTIFICATE OF TITLE OF A VEHICLE

| VEHICLE IDENTIFICATION NO. | YEAR | MAKE | MODEL | BODY STYLE | TITLE NO. |
|---|---|---|---|---|---|
| 1D7HE28K78S516819 | 2008 | DODGE | DAKOTA QUADCAB S | PICKUP | X0279641326 |

| DATE ISSUED | ODOMETER | CCM | MOBILE HOME SQ. FT. | PURCHASED | TYPE OF TITLE |
|---|---|---|---|---|---|
| 10/06/10 | 33183 | | | 02/07/09 USED | CORRECTED |

MAILING ADDRESS

JP MORGAN CHASE BANK NA
PO BOX 901098
FT WORTH TX 76101-2098

LEGEND(S)

ACTUAL MILEAGE

OWNER(S) NAME AND ADDRESS
ANTHONY J SARKAUSKAS JR
BEVERLY A SARKAUSKAS
1332 GARDEN CT
BATAVIA IL 60510

FIRST LIENHOLDER NAME AND ADDRESS
JP MORGAN CHASE BANK NA
PO BOX 901098
FT WORTH TX 76101-2098

SECOND LIENHOLDER NAME AND ADDRESS

RELEASE OF LIEN
The Lienholder on the vehicle described in this Certificate does hereby state that the lien is released and discharged.

Firm Name _____ By _____ Signature of Authorized Agent _____ Date _____

Firm Name _____ By _____ Signature of Authorized Agent _____ Date _____

NEW LIEN ASSIGNMENT: The information below must be on an application for title and presented to the Secretary of State.
Secured Party: _____ Address: _____

Federal and State law requires that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

## ASSIGNMENT OF TITLE

The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address:

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

ODOMETER READING  NO TENTHS
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage.
    WARNING-ODOMETER DISCREPANCY.

"If this vehicle is one of more than 5 commercial vehicles owned by me, I certify also that the vehicle is not damaged in excess of 33 1/3% of its fair market value unless this document is accompanied by a salvage application."

Signature(s) of Seller(s) _____
Printed Name(s) of Seller(s) _____                    DATE OF SALE _____
I am aware of the above odometer certification made by seller.
Signature(s) of Buyer(s) _____ Printed Name _____

I, Jesse White, Secretary of State of the State of Illinois, do hereby certify that according to the records on file with my Office, the person or entity named hereon is the owner of the vehicle described hereon, which is subject to the above named liens and encumbrances, if any. IN WITNESS WHEREOF, I HAVE AFFIXED MY SIGNATURE AND THE GREAT SEAL OF THE STATE OF ILLINOIS, AT SPRINGFIELD.

CONTROL NO. H2247902

*Jesse White*
JESSE WHITE, Secretary of State

DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS